## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| LOCKHEED MARTIN CORPORATION, | § § § | |
| Plaintiff, | § § | Civil Action No. 1:05-CV-0902-CAP |
| v. | § § | |
| L-3 COMMUNICATIONS CORPORATION AND L-3 COMMUNICATIONS INTEGRATED SYSTEMS, L.P., | § § § § § | JURY TRIAL DEMANDED |
| Defendants. | § § | |

### DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES, AND BRIEF IN SUPPORT THEREOF

Defendant L-3 Communications Integrated Systems, L.P. ("L-3") serves the following Response to Plaintiff Lockheed Martin Corporation's ("Lockheed") Motion for an Award of Attorneys' Fees and Litigation Expenses ("Motion") and Brief in Support Thereof, and would respectfully show the Court as follows[1]:

---

[1] L-3 has filed a separate motion pursuant to Federal Rule of Civil Procedure 50(b) disputing the sufficiency of the evidence to support the jury's findings that L-3's misappropriation was willful and malicious pursuant to O.C.G.A. 10-1-764 and that L-3's conduct permits an award of attorney's fees and litigation expenses pursuant to O.C.G.A. 13-6-11. The arguments in that motion serve as additional bases for denying Lockheed's Motion.

# I.     Factual Background

Lockheed knew at the time it filed this lawsuit that at least 80% of the P-3 data *was never trade secret*. (Dx. 116). It also knew that a substantial number of drawings obtained by Newport Aeronautical Sales, Inc. ("Newport") were no longer trade secret. (V.IV at 600). Despite that knowledge and the fact that it had no good faith basis for the majority of its claims, Lockheed forced: (1) L-3 to defend against its substantially baseless misappropriation claim; (2) the Court to preside over this case for more than four years; and (3) the jury to sit through almost three weeks of trial to confirm what Lockheed already knew—that a substantial amount of data Lockheed alleged was trade secret, is not. (Verdict at 1(e), (f)). Lockheed's actions resulted in a significant waste of time for the Court, the jury and the attorneys, and cost both parties significant expense. Lockheed should not be compensated for its actions.

After almost three weeks of trial, the jury found that two of the four categories of P-3 drawings were not trade secret. (Verdict at 1(e), (f)). These two categories constituted approximately 80% of the P-3 drawings. Equally important, based upon its finding as to the Newport drawings, there is legally insufficient evidence to support a finding that *any* P-3 drawings are trade secret. (Dx. 673;

689). The jury also awarded Lockheed just $30 million of the $936 million in damages it sought. (Verdict at 2; V.VI at 960; V.XII at 2035).

Despite these facts, Lockheed now claims it should be awarded the full amount of its attorneys' fees and litigation expenses. Lockheed should not be rewarded for pursuing claims it knew it did not have. Its motion for attorneys' fees and litigation expenses should be denied.

## II.    Argument and Authorities

**A.    This Court should not exercise its discretion to award Lockheed its attorneys' fees under the Georgia Trade Secrets Act ("GTSA").**

### 1.    An award of attorneys' fees under the GTSA is discretionary even if the jury finds the defendant acted maliciously.

Lockheed claims it is "entitl[ed]" to an award of attorneys' fees under the GTSA because the jury found willful and malicious misappropriation. (Motion at 3). Lockheed is incorrect. Under the GTSA, a finding of willful and malicious misappropriation allows the court to *consider* awarding attorneys' fees—it does not mandate such an award. O.C.G.A. § 10-1-764. An award of attorneys' fees is not mandatory "even if the jury finds willful and malicious misappropriation." *O2 Micro Int'l Ltd. v. Monolothic Power Systems*, Inc., 399 F.Supp.2d 1064, 1080 (N.D. Cal. 2005).

In *Real-Time Laboratories, Inc. v. Predator Systems, Inc.*, 757 So.2d 634 (D.C. Fl. 2000), the appellate court upheld the trial court's denial of attorneys' fees after recognizing that the plaintiff had not provided any case "where the appellate court has reversed the denial of an attorney's fees award." *Id*. at 638.  The court went on to examine the character of the plaintiff's behavior, noting that the defendant did not "set out to use [plaintiff's] trade secrets to undermine its business," and also "had reason to believe that its design was not a violation" of the non-disclosure agreements the jury held Defendant had breached. *Id*. In reaching its conclusion, the court also noted that the statute "gives the trial court discretion to award attorneys' fees even if the actions of the misappropriating parties is found to be willful and malicious." *Id*.; *see also Bruning & Federal Mfg. Co. v. Mills*, 647 S.E.2d 672, 675 (N.C. App. 2007) (affirming trial court's decision under Uniform Act "that the actions of the Plaintiff do not merit the award of attorney fees"); *EFCO Corp. v. Symons Corp*., 219 F.3d 734, 744 (8th Cir. 2000) (affirming trial court's denial of attorneys' fees after pronouncement that "the court has considerable discretion to determine whether a defendant's wrongful conduct, be it intentional, deliberate, or even malicious, should result in the plaintiff's recovery of part or all of its attorney fees").

> **2.      Given the fact that Lockheed received just a fraction of what it sought, the Court should exercise its discretion to refuse Lockheed's request for attorneys' fees.**

The Court should exercise its discretion to decline Lockheed's request for attorneys' fees. Lockheed was awarded just 3.2% of the damages it sought. (V.VI at 960, 991; Verdict, Question 2). The jury also found that a substantial portion of the P-3 data Lockheed claimed was trade secret, is not. (Dx. 673, 689; Verdict at Question 1(e), 1(f)).

Moreover, the evidence establishes that Lockheed never had a good faith basis for alleging that all of the P-3 data was trade secret. Lockheed's own president admitted as far back as the 1980s that 80% of the P-3 data was not trade secret;

> [W]hile most of the P-3 airframe drawings reflect the basic features of the Electra, such drawings represent only a relatively small percentage (probably about 20%) of the Lockheed-prepared drawings relating to the overall P-3. Hence, a significant number of P-3 drawings were prepared to specifically support the initial phases of the program, either as original documents or as to be characterized as new designs. **Such drawings were prepared with Navy funds, were treated as nonproprietary by Lockheed, and have always been handled as data in which the Navy has unlimited rights.**

(Dx. 116) (emphasis added). In addition, Lockheed's own in-house data rights expert acknowledged that all drawings obtained by Newport, which is a sizeable

portion of the drawings L-3 uses on Korea Lot II, are not trade secrets and should not have been a part of this lawsuit. (V.IV at 600).

In addition, L-3 conducted a detailed investigation to clarify that it had the right to use every piece of the P-3 data used on Korea Lot II. (V.VII at 1189, 1341-1343, 1347, 1363-1371). Even if L-3's ultimate determination was wrong, which it was not, this evidence establishes that L-3 had a reasonable belief that it had the right to use the P-3 data it was using on Korea Lot II.

Furthermore, the P-7 Settlement and AMS License both contained provisions effectively excluding from their scopes any non-trade secret P-3 data. (Dx. 310 at ¶ 10; Dx. 242; Dx. 159 at § III, ¶ 5A). At the time Lockheed entered into those agreements, it knew that vast amounts of P-3 data were no longer trade secrets. Among other things, Lockheed knew as far back as 1993 that L-3 had a substantial amount of P-3 data; despite that knowledge, it failed to take any steps to protect the rights it now claims it has. (Dx. 124, 125, 127). Similarly, in 1995, Lockheed decided not to sue Newport for possessing P-3 data because that data was not trade secret and in fact did not even attempt to determine what P-3 data Newport possessed, yet later sued L-3 for use of the same data. (V.IV at 597-598, 600, Dx 673, Dx 689). Lockheed also refused in 1998 to sue CASA when it knew CASA was using the same P-3 data that L-3 is using in Korea in order to perform a

similar program for Brazil. (V.III at 433-434, Dx 484). Lockheed allowed CASA to use the data to prepare its bid without verifying CASA's source or right to use P-3 data. (V.III at 480-481). Further, once the program was awarded to CASA, Lockheed did not seek a license nor pursue a misappropriation lawsuit against CASA. (V.X at 1693-1694). To the extent Lockheed had any trade secret interest in P-3 data, it lost that interest when it failed to take reasonable steps to protect the data. Under these circumstances, the Court should deny Lockheed's motion for attorneys' fees.

An award of attorneys' fees under the GTSA would be especially improper here, where Lockheed lost a substantial amount of P-3 data it claimed was trade secret. (Verdict at 1(e), (f)). In a similar trade secret case, the court did not abuse its discretion in denying attorneys' fees even after a finding of willful misappropriation and the award of exemplary damages, when the plaintiff prevailed on only 9 of 27 trade secret claims:

> Cook contends that having found willful and malicious appropriation the bankruptcy court was obligated to award fees. This, however, ignores the language of the statute which is not mandatory but permissive … while Cook brought twenty-seven trade secrets claims to trial, it succeeded on only nine. In these circumstances, the bankruptcy court did not abuse its discretion in denying Cook's request for attorney's fees.

*In re Wilson*, Nos. 97-1924, 97-1983, 98-1315, 1998 WL 671658, at *5 (4th Cir. 1998) (table).

As in *Wilson*, Lockheed obtained a favorable verdict as to only a small portion of the P-3 data it claimed was trade secret. Lockheed's request for an award of attorneys' fees under the GTSA should therefore be denied.

**B.     This Court should not award Lockheed attorneys' fees and litigation expenses pursuant to O.C.G.A. Section 13-6-11.**

Lockheed also seeks an award of attorneys' fees under O.C.G.A. 13-6-11. An award of attorneys' fees for breach of contract under O.C.G.A. 13-6-11 is permissive, and the trial court's denial of attorneys' fees will not be reversed absent an abuse of discretion. *Davis v. Walker*, 288 Ga. App. 820, 825-26, 655 S.E.2d 634 (Ga. App. 2007). Attorneys' fees should not be awarded to Lockheed here.

Section 13-6-11 is a limited exception to the general rule that a party is not entitled to recover its attorneys' fees from the opposing party. O.C.G.A. § 13-6-11. Section 13-6-11 allows for the award of litigation expenses to the plaintiff only if it establishes that the defendant acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense. O.C.G.A. § 13-6-11.

An award of attorneys' fees under Section 13-6-11 based upon stubborn litigiousness or unnecessary trouble and expense is authorized only if no bona fide

controversy or dispute exists as to the defendant's liability. *Nash v. Studdard*, 294 Ga. App. 845, 852, 670 S.E.2d 508, 515 (2008). Attorney fees are not authorized under O.C.G.A § 13-6-11 if the evidence shows that a genuine dispute existed— whether of law or fact, on liability or amount of damages, or on any comparable issues. *M&H Constr. Co. v. North Fulton Dev. Corp.*, 283 Ga. App. 713, 714, 519 S.E.2d 287, 288-89 (1999).

This Court has already held that "a bona fide controversy exists as to the data rights at issue in this case." [Doc. 334]. This conclusion is further necessitated by the evidence. Among other things, Lockheed admitted that the P-3 data at issue in this lawsuit has been the subject of a controversy between the Government and Lockheed throughout the history of the P-3 program. (V.VI at 579-81). As Lockheed's in-house intellectual property lawyer testified, the dispute over P-3 data rights did not end with the P-7 Settlement, but has continued since. (V.VI at 591). Thus, Lockheed is not entitled to an award of attorneys' fees based upon stubborn litigiousness or causation of unnecessary trouble and expense.

Lockheed is also not entitled to an award of attorneys' fees based upon any alleged bad faith. "If there is any reasonable ground . . . to contest the claim, there is no bad faith." *First National Bank v. Wynne,* 149 Ga. App. 811, 818 256 S.E.2d 383, 387 (1979). The evidence makes clear that L-3 had ample "reasonable

ground" to contest Lockheed's claim. (V.VI at 591). Lockheed claimed that 100% of the P-3 data was trade secret. (V.II at 257). L-3 certainly had reasonable ground to dispute that claim—Lockheed's own president admitted that, by 1984, only 20% of the P-3 data was trade secret. (Dx. 116). Additionally, Lockheed's in-house data rights expert acknowledged that the Newport drawings are not trade secret and should not have been a part of this lawsuit. (V.IV at 597-598, 600).

Lockheed also failed to follow up in 1993 to determine what P-3 data was in L-3's possession after having raised the issue of misuse. (Dx. 124). Instead, with full knowledge that vast amounts of P-3 data had been released without restriction, Lockheed entered into the P-7 settlement and waived its "right to bring any cause of action against…any third party" based upon unauthorized use or disclosure that occurred before September 29, 1993. (Dx. 159 at 1, ¶ III(5), ¶ III(7)). Lockheed also failed to conduct a reasonable investigation in 1995 when it learned that Newport had P-3 data, or 1998 when it learned that CASA was using P-3 data to compete against Lockheed on a program substantially similar to Korea Lot II. (V.III at 433-34, 480-81; V.X at 1693-94; Dx. 484). In addition, L-3 conducted a detailed investigation and established that it had the right to use the P-3 data on Korea Lot II. (V.VII at 1189, 1341-1343, 1347, 1363-1371).

As this evidence makes clear, L-3 did not act in bad faith; Lockheed's request for an award of attorneys' fees and litigation costs under Section 13-6-11 should therefore be denied.

## C.   Lockheed has provided no other case with similar circumstances in which attorneys' fees were awarded.

Perhaps the most persuasive argument against an award of attorneys' fees in this case is Lockheed's failure to point to any similar case in which a request was granted pursuant to Section 13-6-11. Indeed, Lockheed cites no case in which a Georgia court has awarded attorneys' fees under 13-6-11 for breach of contract in a case involving misappropriation of trade secrets. Then, reaching beyond the courts of Georgia, Lockheed offers this Court three cases in which *defendants* were awarded attorneys' fees in trade secret cases because *plaintiffs* pursued those cases in bad faith.[2]

---

[2] In *Stillwell Development, Inc. v. Chen,* the court awarded attorneys' fees to a defendant in a misappropriation case after granting defendant's directed verdict because the "plaintiffs' subjective misconduct and the objective speciousness of the trade secret claim amounted to bad faith." *Stillwell Development, Inc. v. Chen,* No. CV86-4487, 1989 WL 418783, 8 5 (C.D.Cal. April 25, 1989). Similarly, in *Sun Media Systems, Inc., v. KDSM, LLC,* the court held that the defendants should be awarded attorneys' fees because "there was a complete lack of evidence" on almost all of plaintiff's trade secrets claim, meaning the "claim was objectively specious" because plaintiff knew or should have known that its claims for misappropriation of trade secrets had "no merit." *Sun Media Systems, Inc., v. KDSM, LLC,*587 F.Supp.2d 1059, 1075 (S.D. Iowa, 2008).

The only case provided by Lockheed to support its request for attorneys' fees for the breach of contract claim is not even remotely similar to this case. *See Lucini Italia Co. v. Grappolini*, No. 01-C-64015, 2003 WL 1989605 (N.D.Ill., April 28, 2003). In that unpublished 2003 case, an Illinois district court awarded attorneys' fees based on the same behavior that led it to assess punitive damages against a trusted advisor to a family company attempting to enter the olive oil business. The individual had: (1) committed fraud and breached his fiduciary duty to the start-up by brokering an exclusive distributorship for himself while employed to broker that deal for the Plaintiff; and (2) then used trade secrets he had worked closely with the plaintiff to develop in order to duplicate plaintiff's product and marketing strategy and compete directly against the Plaintiff. *Id.* at *13, *16-18. The Illinois court was further influenced by the fact that the defendant even failed to show up at trial to "face the consequences" of his obvious betrayal of his personal and business relationships with plaintiff. *Id.* at *1.

Far from supporting Lockheed's position, *Grappolini* actually serves as a stark contrast to this case. The Court should deny Lockheed's request for attorneys' fees and litigation expenses.

**D.      Lockheed is not entitled to the amount of fees and expenses it seeks.**

Even if Lockheed were awarded its attorneys' fees and expenses, it should not be awarded the $14 million in attorneys' fees and $3 million in expenses it seeks. (Motion at 7, 8).

The analysis set out by the 11th Circuit in *Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988) serves as a starting point for determining the correct amount of attorneys' fees to award, if any, in a given case. Lockheed acknowledges that, under *Norman*, the court's initial task is to determine the lodestar amount by determining the reasonable hourly rate, and then multiplying that rate by the hours reasonably expended. *Id*. at 1298-1302. What Lockheed ignores is that this is the starting point—the court "must next consider the necessity of an adjustment for results obtained." *Id*. at 1302. Applying the *Norman* analysis, it is clear that Lockheed is not entitled to anything close to the amount of attorneys' fees it seeks.

**1.      The hourly rate Lockheed seeks is not reasonable.**

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299. In support of its claim that its hourly rates are reasonable, Lockheed submitted declarations from the two law

firms that represented it in this litigation. [Doc. 496, 497, 498, and 499]. As the

*Norman* court explained, this evidence is insufficient:

> The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates. Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work. It should also be noted that in line with the goal of obtaining objectivity, satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits. Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate.

*Id*. at 1299.

The hourly rates Lockheed seeks are not reasonable.  Kilpatrick Stockton's

hourly rates are unreasonable because they exceed the customary rates and charges

for attorneys' fees in the Atlanta market.  (*See* Declaration of Christopher P.

Galanek at ¶ 6).[3] The reasonable Atlanta market rates can be determined from the

PricewaterhouseCoopers LLP annual Billing Rate and Associate Salary Survey for

the years 2005 through 2008. *See id.* at ¶ 9. The hourly rates of many of the

Kilpatrick Stockton attorneys are above the average rate in the Atlanta market. *Id.*

at ¶ 13. For example, William Boice's rates were above market rate by 25.7% in

2005, 20.1% in 2006, 20.2% in 2007 and 12.5% in 2008. *Id.*   Finally, various

---

[3] The Declaration of Christopher Galanek is attached hereto as "Exhibit 1" and fully incorporated herein by reference.

associate's rates ranged from 2-30% above market in 2006, 3-23% above market in 2007, and 4-10% above market in 2008. *Id.* These hourly rates are not reasonable.

Lockheed also bases its hourly rates in part upon standard rates in Washington D.C. (Motion at 12-13). The reasonable hourly rate, however, is to be measured by "prevailing market rates in the relevant community." *Id*. at 1299. The relevant community here is Atlanta, Georgia—not Washington D.C. Further, As the Court knows, Lockheed claimed that "this is not a government contracts dispute.  It is a trade secret and breach of license agreement case." [Doc. 179 at 3]. In fact, Lockheed declared that Government contract law employs a different set of rules and regulations such that "individuals specializing in government contracts may not have the level of familiarity with the Federal Rules of Civil Procedure and complex litigation necessary." [Doc. 179 at 5]. Given Lockheed's insistence that the lawsuit was about trade secrets and breach of contract, a firm like Venable that specializes in government contract law was unnecessary under Lockheed's theory of the case. Venable acted like trial counsel. Venable's rates should be based on the Atlanta market like Kilpatrick Stockton's rates, not the Washington D.C. rates.

In sum, the hourly rates advocated by Lockheed are not reasonable. The reasonable hourly rates that should be used for purposes of the lodestar calculation

are set out in the Declaration of Christopher P. Galanek at ¶12, which is attached

hereto as "Exhibit 1" and fully incorporated herein by reference.

**2.      The hours Lockheed claims to have expended are unreasonable.**

When arriving at the number of hours reasonably expended for purposes of

calculating the lodestar, excessive, redundant or otherwise unnecessary hours *must*

be excluded. *Norman*, 836 F.2d at 1301. Hours spent on discrete and unsuccessful

claims *must* also be excluded. *Id*.

Lockheed's lodestar calculation is based upon a significant number of hours

that are excessive, redundant or otherwise unnecessary. (Ex. 2, Declaration of

Martin E. Rose).[4] A detailed analysis of the unreasonableness of the hours for

which Lockheed seeks recovery is provided in the attached Exhibit 2. Here is a

small sample of the unreasonable hours for which Lockheed is attempting to

recover:

> - 2,700 hours spent preparing a trial summary of legends of P-3
> drawings, reports and specifications, when Lockheed's own
> expert, Gary Oderkirk, testified that he and his team personally
> did the same work in order to prepare Plaintiff's Exhibit 489.
> (Ex. 2 at ¶ 18; V.IV at 709-10);
>
> -819.8 hours spent preparing Lockheed's original exhibit list
> containing more than one million pages of exhibits for the first

---

[4] The Declaration of Martin E. Rose is attached hereto as "Exhibit 2" and fully
incorporated herein by reference.

Pre-trial hearing. This exhibit list was determined by this Court to be unreasonable, and was disallowed. (Ex. 2 at ¶ 17);

-775.5 hours spent preparing an *outline* for a motion for summary judgment. (Ex. 2 at ¶ 18);

-886.7 hours of overlapping work performed by two different law firms in connection with an Order of Proof outline. (Ex. 2 at ¶ 18);

-2,542 hours to review P-3 drawings and prepare a list of over 92,000 alleged trade secrets. Lockheed's lead counsel disclaimed to this Court any attempt to seek recovery for this list. (November 24, 2008 Pre-trial Transcript at 13-23; Ex. 2 at ¶ 19);

-2,569.6  hours spent responding to L-3's discovery requests identifying all P-3 data L-3 was allegedly misappropriating on the Lot II Program, despite the fact that its own President admitted that 80% of the P-3 data was never trade secret. (Ex. 2 at ¶ 20; Dx 116);

-1262.8 hours spent reviewing Newport drawings, even though Lockheed's own in house intellectual property lawyer investigated the Newport data in 1995 and determined that it was not trade secret. (Ex. 2 at ¶ 21);

-attempting to recover for hours spent in connection with pursuing claims against L-3 Corporation, despite admitting that these hours are not recoverable. (Ex. 2 at ¶ 22; Doc. 490 at 2 n.2); and

-attempting to recover for duplicitous and overlapping work done by two separate law firms, who overstaffed the case with 77 paralegals and junior paralegals, 28 associates, 15 partners, one project attorney, one staff attorney and two contract attorneys to overwork this case. (Ex. 2 at ¶ 14).

This is just a sample of the unreasonable hours for which Lockheed is attempting to recover. In total, Lockheed seeks to recover for 58,405.4 hours allegedly expended in its defense. (Declaration of William Boice at ¶¶ 14-25; Declaration of Terry Elling at ¶¶ 5-15). This number does not reflect the number of hours that should have been reasonably expended on this case. After a detailed analysis of the evidence provided by Lockheed, the total number of hours that should reasonably have been expended in defending Lockheed is 37,567.50. (Ex. 2 at ¶¶ 24-26). When the number of hours reasonably expended is multiplied by reasonable hourly rates of the community, the resulting fee is $9,061,804.95. (Ex. 2 at ¶¶ 24-26; Ex. 1 at ¶¶ 12-14). This is the correct initial lodestar amount, before adjusting for the results obtained.

**3. The lodestar amount should be adjusted significantly downward to reflect the fact that the results Lockheed obtained fell far short of what it sought.**

Under *Norman*, the Court now has a duty to adjust the lodestar amount based upon results obtained:

> After the lodestar is determined by multiplication of a reasonable hourly rate times hours reasonably expended, the court must next consider the necessity of an adjustment for results obtained. If the result was excellent, then the court should compensate for all hours reasonably expended. **If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive.** In doing so, the court may attempt to identify specific hours spent in unsuccessful claims or it may simply reduce the award

by some proportion. **A reduction is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole.**

*Id*. at 1302 (emphasis added, internal citations omitted).

In this case, the results Lockheed obtained were far less than it sought. Lockheed obtained a finding that just 20% of the P-3 drawings were trade secret, and was awarded just 3.2% of the damages it sought. (V.VI at 960, 991; Dx. 673, 689; Verdict at 1(e), (f), 2).

Given the fact that Lockheed recovered just a small portion of what it sought in this lawsuit, the lodestar amount should be adjusted significantly downward. (Ex. 2  at ¶ 19). An appropriate reduction would be 80% of the lodestar amount. (Ex. 2  at ¶¶ 19-20). Indeed, an 80% reduction is especially appropriate in this case because Lockheed has known all along and publicly acknowledged since 1984 that at least 80% of the data it claimed was trade secret in this lawsuit ***never was proprietary***. (Dx. 116). Thus, to the extent that Lockheed is awarded any attorneys' fees at all, this Court should reduce the lodestar amount by 80%, which would result in an award of $1,812,360.99.

## E.    Lockheed is not entitled to recover all of the expenses it seeks.

Lockheed also seeks to obtain an award of expenses that are not recoverable. For example, Lockheed seeks to recover $154,827.10 in charges "incident to

document reproduction and discovery. (Boice Declaration at Ex. A, 13). Lockheed admits, however, that these costs are nontaxable. Accordingly, Lockheed should not be awarded this amount.

In addition, Lockheed seeks to recover $235,958.99 in "attorney and certain witness travel expenses", and $1,983,941.36 in "testifying and consulting expert fees". *Id*. at 45-81. But these fees are not recoverable. *Fresh Quest, Inc. v. Growers Marketing Service, Inc*., 2009 WL 1227817, at *3 (S.D. Fla. May 5, 2009) (slip copy). Similarly, Lockheed's request for $13,985.14 in shipping and courier fees, and $11,224.28 in telephone, fax and conferencing fees should also be excluded. *Gary Brown & Associates, Inc. v. Ashdon, Inc.*, 268 Fed.Appx. 837, 845-46 (11th Cir. 2008).

### III.   Conclusion and Prayer for Relief

For these reasons, Defendant L-3 Communications Integrated Systems, L.P. respectfully requests that this Court deny Plaintiff Lockheed Martin Corporation's Motion for an Award of Attorneys' Fees and Litigation Expenses, or in the alternative, award it a maximum of $1,812,360.99, and for such other relief to which it is justly and equitably entitled.

This pleading has been prepared in 14-point Times New Roman font in accordance with Local Rule 5.1(C).

Respectfully submitted this 17th day of August, 2009.

/s/ **Christopher P. Galanek**
Christopher P. Galanek
Georgia Bar No. 282390
**BRYAN CAVE POWELL GOLDSTEIN**
One Atlantic Center
Fourteenth Floor
1201 West Peachtree Street, NW
Atlanta, GA 30309-3488
(404) 572-6600 (Telephone)
(404) 572-6999 (Facsimile)


Martin E. Rose
Texas Bar No. 17253100
Christopher McDowell
Texas Bar No. 24002571
Jennifer Graf
Texas Bar No. 24043699
Admitted *Pro Hac Vice*
**ROSE WALKER, LLP**
3500 Maple Avenue, Suite 900
Dallas, TX 75219
(214) 752-8600 (Telephone)
(214) 752-8799 (Facsimile)

*Attorneys for L-3 Communications
Integrated Systems, L.P*

## Certificate of Service

The undersigned hereby certifies that a true and correct copy of the foregoing has been filed with the U.S. District Court's CM/ECF System and that pursuant thereto, a copy of this pleading has been served upon the following persons by electronic mail:

William H. Boice
James F. Bogan III
Audra A. Dial
KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA  30309-4530

Thomas J. Madden
Terry L. Elling
**VENABLE LLP**
575 7th Street, NW
Washington, D.C. 20004

This 17th day of August, 2009.

**/s/ Christopher P. Galanek**
Christopher P. Galanek
Georgia Bar No. 282390
**BRYAN CAVE POWELL GOLDSTEIN**
One Atlantic Center
Fourteenth Floor
1201 West Peachtree Street, NW
Atlanta, GA 30309-3488
(404) 572-6600 (Telephone)
(404) 572-6999 (Facsimile)