```
              UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF GEORGIA
                    ATLANTA DIVISION
```

LOCKHEED MARTIN CORPORATION,

      Plaintiff,            CIVIL ACTION

    v.                     NO. 1:05-CV-902-CAP

L-3 COMMUNICATIONS INTEGRATED
SYSTEMS, L.P.,

      Defendant.

## **O R D E R**

This matter is now before the court on the plaintiff's motion for final judgment [Doc. No. 489] and motion for attorney fees and expenses [Doc. No. 490]. Also pending are the defendant's motion to exclude evidence [Doc. No. 506] and motion to dismiss, or alternatively, motion for new trial [Doc. No. 514].

## I. Case Overview

Lockheed Martin Corporation ("Lockheed"), the plaintiff in this action, asserted claims for misappropriation and misuse of trade secrets and breach of license agreements against L-3 Communications Integrated Systems, L.P. ("L-3"). Specifically, Lockheed sought "relief with respect to L-3's misappropriation and misuse of trade secrets and breach of license agreements between the parties for certain uses of Lockheed Martin proprietary data for the P-3 aircraft ("P-3 Data")". This case came before the

court for trial in May 2009. A jury found in favor of Lockheed on its trade secret claim and breach of license claim.

## II.  Allegations of Discovery Abuse

Prior to entry of judgment, L-3 filed a motion to dismiss or, in the alternative, a motion for new trial [Doc. No. 514] based on allegations of discovery abuse by Lockheed. First, L-3 contends that Lockheed failed to turn over certain documents that would have shown that Lockheed knowingly allowed a competitor, CASA-EADES ("CASA"), to use its proprietary data without a license in performing a contract for Brazil to upgrade P-3 aircraft. Evidence that Lockheed allowed another company to utilize its proprietary data is important because failure to maintain the secrecy of such data results in the termination of trade secret status. The main thrust of L-3's defense in this case was that the data it utilized was no longer a trade secret because it had not been properly protected by Lockheed.

Second, L-3 contends that the withheld documents would have shown that a letter of assurance from CASA relied upon at trial by Lockheed was actually meaningless and was created by Lockheed to cover the fact that it had allowed its trade secrets to be used without compensation. Lockheed used this letter at trial to buttress its claims that it had taken all necessary steps to protect its trade secrets. The fact that Lockheed, rather than

CASA, drafted the letter is an important fact that L-3 could have presented to the jury in arguing that the steps Lockheed took to protect its trade secrets had been all form and no substance.

### III. Legal Analysis

It is undisputed that Lockheed did not turn over certain internal emails to L-3 during discovery in this action.  See Ex. 1, Ex. 2, Ex. 3, and Ex. 4 to L-3's motion to dismiss [Doc. No. 514]. L-3 obtained these emails in discovery in another civil action in which L-3 is suing Lockheed for antitrust violations.  That action is being conducted in the District Court for the Northern District of Texas.

Lockheed contends that these documents were not clearly responsive to a discovery request propounded in the instant case. The court disagrees.  The emails identified by L-3 were responsive to L-3's Requests to Produce numbers 73 and 74, which requested:

> All assessments, analyses, memoranda, white papers, or studies concerning ownership or use of, or rights in, Electra or P-3 data.

> All assessments, analyses, memoranda, white papers, or studies concerning Electra or P-3 data rights.

Because the court has found that Lockheed failed to comply with its discovery obligations with regard to the documents now in possession of L-3, the next step is to determine whether the

3

sanction of dismissal is appropriate or, alternatively, whether a new trial is warranted.

**A.  Motion to Dismiss**

L-3 relies upon Federal Rules of Civil Procedure 26 and 37, along with the inherent powers of the court, for its argument that Lockheed should be sanctioned through a dismissal of it entire lawsuit.  This court's power to issue sanctions "must be exercised with restraint and discretion."  Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991) (citing Link v. Wabash Railroad Co., 370 U.S. 626, 630-31 (1962)).  In exercising its discretion, this court will only impose the sanction of dismissal only when a misdeed occurs that cannot be corrected by lesser means.  "The '[d]ismissal of a party's complaint or answer, or striking its defenses, as a sanction . . . is a heavy punishment,' appropriate 'only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders.'"  Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc., 561 F.3d 1298, 1306 (11th Cir. 2009) (quoting In re Sunshine Jr. Stores, Inc., 456 F.3d 1291, 1304 (11th Cir. 2006)).

L-3 has not established in its motion to dismiss that lesser sanctions will not repair the harm caused by Lockheed's discovery abuse.  While the court is puzzled by the fact that Lockheed provided certain emails related to the P-3 data rights with respect

to the Brazil program and even emails within the same email "tree" while withholding the emails at issue here, the court is hesitant to find that the documents at issue were intentionally withheld for the purpose of obtaining an advantage in this litigation, particularly in light of the voluminous amount of documents that were exchanged in this matter.  Regardless of whether the withholding of the documents identified by L-3 in the instant motion was done willfully and in bad faith, the court finds that the extreme sanction of dismissal is not warranted here.  Lesser sanctions are available to undo any harm suffered by L-3 in this case.  Accordingly, the motion to dismiss [Doc. No. 514-1] is DENIED.

**B.  Motion for New Trial**

L-3 moves, alternatively, for a new trial pursuant to Federal Rule of Civil Procedure 59 on the basis of newly discovered evidence.  A motion for new trial grounded upon newly discovered evidence will not be granted unless:

> (1) the facts discovered are of such a nature that they would probably change the outcome; (2) the facts alleged are actually newly discovered and could not have been discovered earlier by proper diligence; and (3) the facts are not merely cumulative or impeaching.

English v. Mattson, 214 F.2d 406, 409 (5th Cir. 1954).

In this case, the second requirement, that the facts actually be newly discovered and not discoverable earlier through proper

diligence, is met.  The court finds that the documents in question were withheld by Lockheed and were not and could not have been discovered by L-3 through proper diligence.

With regard to the third requirement of <u>English</u>, that newly discovered evidence must be more than merely cumulative or impeaching, Lockheed has argued that the internal emails are simply cumulative.  <u>See</u> Lockheed's brief in opposition to the motion to dismiss pp. 31-33 [Doc. No. 531]. The court disagrees.  When responding to questions by the court regarding Lockheed's claim that the evidence at issue was cumulative [Doc. No. 553], Lockheed was unable to point to a single piece of discovery produced in this action that demonstrated what was evident in the withheld emails: that at some point, Lockheed employees knew or believed that CASA was planning to illegally utilize Lockheed's data and that Lockheed intended to allow this to happen.  Instead, Lockheed directs the court to evidence that shows Lockheed, at one time, believed that CASA would need to use Lockheed data in performing the Brazil contract, but that Lockheed later discovered that CASA would not need or utilize Lockheed proprietary data with respect to the Brazil program.  <u>See</u> Lockheed's supplemental brief in opposition to the motion to dismiss pp. 9-12 [Doc. No. 555].  This evidence, while certainly valuable to Lockheed in combating L-3's claims that Lockheed allowed its trade secrets to escape in relation to CASA's

performance of the Brazilian contract, is dramatically different from inferences raised in the withheld documents.  Also, Lockheed has conceded that no information was produced in this action directly showing Lockheed's participation in the draft of the October 8 assurance letter from CASA to Lockheed [Doc. No. 555 at p. 20].  Therefore, the court concludes that the documents at issue here are neither cumulative of discovery turned over nor simply impeaching evidence.  Accordingly, the third prong of the <u>English</u> test has been met.

Finally, returning to the first requirement of <u>English</u>, the court must determine whether the facts discovered are of such a nature that they would probably have changed the outcome in this case.  First, L-3 contends that this court's ruling on the portion of the motions for summary judgment as they related to the statute of limitations defense would have been different.  The court disagrees.  The analysis made by the court regarding the triggering of the statute of limitations as to L-3's alleged misappropriation of Lockheed's [Doc. No. 334] would not change even if the court had been presented with evidence that established Lockheed had been aware that CASA had been misappropriating Lockheed proprietary data as early as 1998.

Second, L-3 argues that the jury's verdict would have been different. This determination is very difficult to make in

hindsight. Both parties have presented persuasive arguments that would have been raised before the jury related to the information at issue here. The point is that L-3 <u>should</u> have had the opportunity to make these arguments to the jury. Moreover, had L-3 been given the documents during discovery, it is likely that follow up discovery would have been conducted, and, at the very least, the drafters of the emails in question would have been asked about their statements therein. Therefore, the court concludes that it is more than possible, and is even probable, that the outcome of the jury trial would have been different in this case if Lockheed had properly turned over the documents.

Because the three-part <u>English</u> test used to analyze a Rule 59 motion for new trial has been met, the motion for new trial [Doc. No. 514-2] is GRANTED.

**IV. Conclusion**

L-3's motion to dismiss [Doc. No. 514-1] is DENIED. L-3's alternative motion for new trial [Doc. No. 514-2] is GRANTED. In light of the grant of a new trial, the remaining motions regarding judgment and attorney fees [Doc. Nos. 489, 490, and 506] are DISMISSED.

**SO ORDERED**, this <u>31st</u> day of March, 2010.

<u>/s/ Charles A. Pannell, Jr.</u><br>
CHARLES A. PANNELL, JR.<br>
United States District Judge